**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JERRY GORALSKI LAMB, *Plaintiff,* v. UNITED STATES OF AMERICA, *Defendant.* | Civil Action No. 21-3000 (RDM) |

**MEMORANDUM OPINION**

This is Plaintiff Jerry Goralski Lamb's third lawsuit involving the same series of events.

For a brief time in 2016, Plaintiff worked as a private contractor assigned to the Millennium

Challenge Corporation ("MCC"). When he started that assignment, Plaintiff thought that the

required government background investigation had been completed, but he soon learned that the

investigation was still ongoing. A few weeks later, he was fired without explanation. To get to

the bottom of the matter, Plaintiff filed requests under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking records related to his

work as an MCC contractor. In his first case, Plaintiff sought to compel the MCC to disclose

records responsive to those requests. *See Lamb v. Millennium Challenge Corp.*, No. 16-cv-765

("*Lamb I*"), Dkt. 1 (Compl.).[1] Then, based on the records he received, Plaintiff filed a second

suit, asserting four constitutional due process claims, two Privacy Act claims, and other claims

against the MCC and James Blades, an MCC employee. *See Lamb v. Millennium Challenge*

---

[1] In the interest of clarity, the Court will cite to filings in Plaintiff's earlier cases—referred to here as "*Lamb I*" and "*Lamb II*"—by reference to the ECF number of the docketed filing in each matter. For example, the complaint in *Lamb I* will be cited as *Lamb I*, Dkt. 1 (Compl.).

Case 1:21-cv-03000-RDM   Document 14   Filed 07/26/22   Page 2 of 20

*Corp.*, No. 19-cv-589 ("*Lamb II*"), Dkt. 1 (Compl.).  In December 2020, with leave of Court,

Plaintiff filed an amended complaint in *Lamb II*, adding claims against the United States under

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.  See Lamb II*, Dkt. 29

(Am. Compl.).  The Court dismissed Plaintiff's FTCA claims in *Lamb II* for failure to exhaust

administrative remedies *before* filing suit, as required by statute.  *See Lamb v. Millennium*

*Challenge Corp.*, --- F. Supp. 3d ---, 2021 WL 4439234, at *10–11 (D.D.C. Sept. 27, 2021)

(citing 28 U.S.C. § 2675(a)).  Plaintiff's due process claims and one of his Privacy Act claims in

*Lamb II* remain pending, however, and the parties are engaged in discovery, which is set to close

on September 2, 2022.  *See Lamb II*, Minute Entry (Mar. 17, 2022).

On November 12, 2021, Plaintiff (once again proceeding *pro se*) brought this case, his

third lawsuit ("*Lamb III*").  Dkt. 1 (Compl.).  In this case, he names the United States as the

Defendant and seeks to recover pursuant to the FTCA.  *Id.*  The complaint, however, is not the

picture of clarity because it tracks Plaintiff's factual allegations in *Lamb II*, *compare id.* at 3–7

(Compl. ¶¶ 10–27), *with Lamb II*, Dkt. 29 at 3–5 (Am. Compl. ¶¶ 6–22), and it includes four

"causes of action," each of which bears the same "Due Process" caption that appears in the

ongoing *Lamb II* litigation, *compare* Dkt. 1 at 7–20 (Compl. ¶¶ 28–51), *with Lamb II*, Dkt. 29 at

6–11 (Am. Compl.).  The first few paragraphs of each "cause of action" in *Lamb III* are the same

as those in *Lamb II*.  But, in *Lamb III*, Plaintiff adds four new identical paragraphs to each of the

preexisting "causes of action."  *See* Dkt. 1 at 8–20 (Compl. ¶¶ 31–34, 36–39, 43–46, 48–51).  As

the Court understands Plaintiff's current claims, each of those additional paragraphs corresponds

to a common law cause of action that Plaintiff now asserts pursuant to the FTCA: (1) "the tort of

negligence;" (2) "the tort of . . . wrongful termination;" (3) "the tort of Respondeat Superior;"

and (4) the "tort of infliction of emotional distress." *See, e.g.*, Dkt. 1 at 8–10 (Compl. ¶¶ 31–34).[2]

The United States moves to dismiss Plaintiff's claims in *Lamb III* pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 7 at 1.  It first argues that the Court lacks subject-matter jurisdiction because Plaintiff failed to satisfy the FTCA's "presentment requirement."  *Id.* at 7–9.  The United States also argues that, even if the Court has subject-matter jurisdiction, Plaintiff's claims should be dismissed because (1) they are time-barred, *id.* at 9–10, and (2) Plaintiff fails plausibly to allege any common law tort claims that fall within the scope of the FTCA's waiver of sovereign immunity, *id.* at 10–14.

As explained below, the Court concludes that it has subject-matter jurisdiction but that Plaintiff fails to state a claim.  The Court, accordingly, will **GRANT** the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

## I.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction.  A Rule 12(b)(1) motion "may take one of two forms." *Hale v. United States*, No. 13-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015).  First, it "may raise a 'facial' challenge to the Court's jurisdiction." *Id.*  A facial challenge asks whether the complaint alleges facts sufficient to establish the Court's jurisdiction. *McCabe v. Barr*, 490 F. Supp. 3d 198, 210 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To survive a Rule 12(b)(1) motion to dismiss an FTCA claim, the plaintiff must plausibly allege facts

---

[2] As discussed further below, although Plaintiff purports to state a claim for "respondeat superior," *see* Dkt. 1 at 9 (Compl. ¶ 33), "[r]espondeat superior is not itself a cause of action or a cognizable legal claim," *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 43 (D.D.C. 2007) (collecting cases).

sufficient to invoke the statute's waiver of sovereign immunity. *Johnson v. Veterans Affs. Med. Ctr.*, 133 F. Supp. 3d 10, 14 (D.D.C 2015) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).  In this posture, the Court must accept the factual allegations of the complaint as true. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (collecting cases).

"Alternatively, a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3 (citing *Erby*, 424 F. Supp. 2d at 182–83).  When a motion to dismiss is framed in this manner, the Court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (collecting cases).  The Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (citations and quotation marks omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), in contrast, "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 675, 678 (2009)).  The complaint, however, need not include "detailed factual

allegations" to withstand a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is . . . unlikely," so

long as the facts alleged in the complaint are "enough to raise a right to relief above the

speculative level."  *Id.* at 555–56 (citations and quotation marks omitted).

A *pro se* complaint, "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "This benefit is not, however, a

license to ignore the Federal Rules of Civil Procedure," *Sturdza v. United Arab Emirates*, 658

F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted), and thus a *pro se* complaint must "still

'present a claim on which the Court can grant relief' to withstand a Rule 12(b)(6) challenge,"

*Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (citations omitted).  As with any other

plaintiff, a *pro se* plaintiff must meet his burden of establishing subject-matter jurisdiction.

*See, e.g.*, *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 178 (D.D.C. 2007).

## II.  ANALYSIS

### A.      Presentment

The United States first argues that Plaintiff failed to exhaust administrative remedies

because he "never in form or substance 'presented'" his tort claims to the MCC.  Dkt. 7 at 7.

The FTCA provides, in relevant part, that "[a]n action shall not be instituted upon a claim against

the United States for money damages for injury or loss . . . caused by the negligent or wrongful

act or omission of any employee of the Government while acting within the scope of his office or

employment, unless the claimant shall have first presented the claim to the appropriate Federal

agency and his claim shall have been finally denied by the agency in writing and sent by certified

or registered mail." 28 U.S.C. § 2675(a). This exhaustion requirement is "known as the FTCA's

'presentment requirement,' and it 'is a jurisdictional prerequisite to filing suit.'" *Lamb v. Bureau*

*of Alcohol, Tobacco, Firearms & Explosives*, No. 20-cv-3036, 2022 WL 203433, at *5 (D.D.C.

Jan. 24, 2022) (quoting *Tookes v. United States*, 811 F. Supp. 2d 322, 331 (D.D.C. 2011)). A

"jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a

written statement sufficiently describing the injury to enable the agency to begin its own

investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901,

905 (D.C. Cir. 1987).

The Court concludes that Plaintiff has satisfied the "minimal" standard for presentment

under the FTCA.[3] *Tookes*, 81 F. Supp. 2d at 331 (citing *GAF Corp.*, 818 F.2d at 920). The

administrative claim consists of a completed form SF-95. *Lamb II*, Dkt. 35-1. Where the SF-95

directs Plaintiff to "state the nature and extent of each injury . . . which forms the basis of the

claim," Plaintiff responded: "[p]lease see attached basis of claim," *id.* at 1, and he then attached

portions of his compliant in *Lamb II*, *id.* at 3–16. That approach needlessly confused matters, but

not to an extent sufficient to defeat jurisdiction.

Attaching portions of the *Lamb II* complaint confused matters because that complaint

alleges claims for various deprivations of due process and does not allege any common law tort

claims. But, as the United States acknowledges, "[c]ourts generally take a non-legalistic

approach to the FTCA's presentment requirement and do not require a claimant to enumerate

every potential cause of action or theory of liability." Dkt. 7 at 8 (quoting *Singh v. S. Asian*

*Soc'y of George Wash. Univ.*, No. 06-0574, 2007 WL 1521050, at *8 (D.D.C. May 21, 2007)).

Rather, the FTCA merely requires the "claimant to file (1) a written statement sufficiently

---

[3] Plaintiff's administrative claim is filed on the docket in *Lamb II*, Dkt. 35-1.

*describing the injury* to enable the agency to begin its own investigation, and (2) a sum-certain

damages claim." *GAF Corp.*, 818 F.2d at 905 (emphasis added).  The purpose of the

presentment requirement is served where the claimant provides sufficient information to "initiate

a settlement procedure in which the agenc[y] [is able to] investigate [any potential tort] claims."

*Id.* at 918; *see also Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)

("[A]s long as the language of an administrative claim serves due notice that the agency should

investigate the possibility of particular (potentially tortious) conduct and includes a specification

of the damages sought, it fulfills the notice-of-claim requirement." (citing *Santiago-Ramirez v.*

*Sec'y of the Dep't of Def.*, 984 F.2d 16, 20 (1st Cir. 1993))).

　　　Here, Plaintiff's FTCA notice clears that modest hurdle.  First, he specifies a sum certain

of damages: $1,999,999.98.  *Lamb II*, Dkt. 35-1 at 1.  Second, he sets forth facts and an alleged

injury sufficient to put the MCC on notice of the purportedly wrongful conduct and to permit the

agency to investigate whether any tort occurred.  He asserts, for example, that his background

investigation included "incomplete information regarding alleged psychological treatment" that

was "unfairly used as a factor in the MCC's unfavorable determination," *id.* at 6; that "the MCC

willfully and intentionally documented for the record[] a patently false statement in the

Adjudication Worksheet," *id.* at 7; that "[t]he agency acted in a manner in which it intentionally

and willfully misrepresented the record to deprive[] [Plaintiff] of his employment and ability to

provide for himself as well as his family," *id.*; that "MCC officials confiscated [Plaintiff's]

government identification, removed him from the premises, and terminated his employment"

without cause, *id.* at 5; and that the agency "failed to maintain records concerning [Plaintiff] with

such accuracy and completeness as is necessary to assure fairness in its determination relating to

the qualifications, character, rights, or opportunities of, or benefits to [Plaintiff] that may be made on the basis of such record," *id.* at 14–15.

To be sure, as discussed further below, it is far from clear that any of these allegations are sufficient to state a compensable tort claim. But that question is distinct from the threshold jurisdictional inquiry, and, as to that inquiry, the Court is persuaded that it has jurisdiction to determine—on the merits—whether Plaintiff has stated a claim. The Court, accordingly, rejects the government's motion to dismiss for lack of jurisdiction.

**B.      Failure to State a Claim**

The government also moves to dismiss Plaintiff's tort claims pursuant to Rule 12(b)(6) on two separate grounds. First, it argues that Plaintiff's tort claims are time-barred under 28 U.S.C. § 2401(b), which requires administrative exhaustion of tort claims against the United States "within two years after such claim[s] accrue[]." Dkt. 7 at 9. Second, the government argues that each of Plaintiff's four tort claims—negligence, "wrongful termination," "Respondeat Superior," and "infliction of emotional distress"—fails to state a claim upon which relief can be granted. Dkt. 7 at 10–14. Because the Court agrees with the government's second argument, and because "the FTCA's time bars are nonjurisdictional and subject to equitable tolling," *United States v. Wong*, 575 U.S. 402, 420 (2015), the Court will limit its discussion to that second argument.

1.      *Negligence*

Plaintiff first alleges that "[e]mployee(s) were negligent in their duty to ensure Plaintiff's opportunity to contest the [MCC's] incorrect finding [that he was] unfit . . . before wrongfully terminating [him] and removing him from his employment." Dkt. 1 at 8 (Compl. ¶ 31). The FTCA waives the United States' sovereign immunity "only to the extent that a private person in

like circumstances could be found liable in tort under local law." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985).  When determining whether the United States is liable in tort under the FTCA, courts apply the law of the place of the tort.  *See* 28 U.S.C. § 1346(b)(1).  Here, although Plaintiff does not say where the alleged torts took place, he cites D.C. law in his complaint, *see, e.g.*, Dkt. 1 at 8 (Compl. ¶ 31), and the Court has no reason to believe that the relevant events took place elsewhere.  The Court will, accordingly, apply D.C. law to Plaintiff's tort claims.  The elements of negligence under D.C. law are "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Afanasieva v. Wash. Metro. Area Transit Auth.*, --- F. Supp. 3d ---, 2022 WL 621398, at *8 (D.D.C. Mar. 3, 2022) (quoting *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016)).  According to the United States, Plaintiff has failed to allege facts sufficient to meet the first element because he "has not alleged any legal duty recognized under District of Columbia law." Dkt. 7 at 11.  The Court agrees.

To survive a motion to dismiss, a plaintiff asserting a negligence claim must "characterize the duty whose breach might have resulted in negligence liability." *Smith v. United States*, 157 F. Supp. 3d 32, 40 (D.D.C. 2016) (quoting *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)).  The complaint's "description of the duty," moreover, "cannot . . . 'rest on mere "conclusory assertions."'" *Id.* (quoting *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010)).  Here, however, Plaintiff said nothing about any common law tort duty in his FTCA claim, and, even considering the additional allegations contained in his complaint, the Court can identify no such applicable tort duty.  Plaintiff alleges that the MCC owed him a "duty to ensure [that he had an] opportunity to contest the agency's" finding that he was unfit for his employment. Dkt. 1 at 8 (Compl. ¶ 31).  But that is a legal conclusion, which the Court need

not accept as true for purposes of resolving a motion to dismiss, *Iqbal*, 556 U.S. at 678–79, and

Plaintiff fails to identify any relevant source of a duty enforceable under D.C. tort law.  To be

sure, Plaintiff does cite to federal law—the Fifth Amendment, the Privacy Act, and federal

regulations regarding "agency-initiated suitability actions" and the procedures required for

permitting "applicant[s] or appointee[s]" to challenge agency suitability determinations*, see* 5

C.F.R. § 731.401–04.  But Plaintiff has separately raised his federal claims in *Lamb II*, *see Lamb*

*II*, Dkt. 29 at 6–11 (Am. Compl.), and, in any event, it is well established that federal law "does

not of itself create a cause of action under the FTCA."  *Art Metal-U.S.A.*, 753 F.2d at 1157

(collecting cases); *see also id.* at 1158 (holding that federal regulations "do not . . . automatically

create duties cognizable under *local tort law*," as is required to state a claim under the FTCA);

*FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself

liable under [the FTCA] for constitutional tort claims.").  The regulations that Plaintiff invokes,

moreover, "do not apply to Plaintiff as an employee of an MCC contractor."  *Lamb v.*

*Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 112 (D.D.C. 2020) (citing 5 C.F.R.

§§ 731.101, 731.104).

      In his opposition brief, Plaintiff points to two potential state-law sources of a duty, both

of which are inapplicable here.  First, he maintains that he had a "special relationship" with the

MCC because the agency was "entrusted with [his] sensitive personal information for the

purpose of suitability and employment."  Dkt. 11 at 18.  But D.C. law does not recognize a

"special relationship" for purposes of establishing a duty cognizable under the law of negligence

whenever an agency obtains private information about a contractor's employee.  *See, e.g.*,

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 812 n.39 (D.C. 2011) (en banc) (special

relationships include relationships involving "(1) carrier-passenger, (2) innkeeper-guest,

(3) invitor-invitee or possessor of land open to the public and one lawfully upon the premises;

(4) employer-employee, (5) school-student, (6) landlord-tenant, and (7) custodian-ward" (citing

Dan B. Dobbs, *Undertakings and Special Relationships in Claims for Negligent Infliction of*

*Emotional Distress*, 50 Ariz. L. Rev. 49, 54 (2008))). To be sure, in some contexts, D.C. law

recognizes a special relationship between employers and their employees, *see id.*, but Plaintiff

was not an MCC employee, *see Lamb*, 498 F. Supp. 3d at 112. Nor has Plaintiff identified any

basis to conclude that the special employer-employee relationship gives rise to a duty to ensure

that employees have an opportunity to dispute the results of their background investigations, as

Plaintiff argues. *Cf. Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 629 (D.C. 1997)

(rejecting the plaintiff-employee's "conclusory" argument that the defendant-employer "owed a

duty to 'conduct a fair, impartial, and unbiased investigation'" into a sexual harassment claim).

Second, Plaintiff contends that "one engaged in supplying information has a duty to

exercise reasonable care." Dkt. 11 at 19 (quoting *Sec. Nat'l Bank v. Lish*, 311 A.2d 833, 834

(D.C. 1973)). The *Security National Bank* case on which he relies, however, dealt only with the

tort of negligent misrepresentation of information in a business capacity. *See Rocha v. Brown &*

*Gould, LLP*, 101 F. Supp. 3d 52, 85 (D.D.C. 2015). Here, in contrast, Plaintiff does not assert a

claim for negligent misrepresentation. Nor could he. The FTCA's waiver of sovereign

immunity does not apply to "[a]ny claim arising out of . . . libel, slander, misrepresentation, [or]

deceit." 28 U.S.C. § 2680(h); *see also United States v. Neustadt*, 366 U.S. 696, 702 (1961)

(holding that Section 2680(h) "comprehends claims arising out of negligent, as well as willful,

misrepresentation").

At best, Plaintiff merely recasts his procedural due process claims in terms of a common

law negligence claim. But the FTCA's requirements "may not be circumvented merely by

casting the alleged constitutional wrong as negligence." *Art Metal-U.S.A.*, 753 F.2d at 1160. Accordingly, the Court will dismiss Plaintiff's negligence claim.

       2.       *"Respondeat Superior"*

The complaint also asserts a claim for "the tort of [r]espondeat [s]uperior." Dkt. 1 at 9 (Compl. ¶ 33). In response to the government's contention that "respondeat superior is not an independent tort claim," Dkt. 7 at 13 (quoting *Simmons v. Skelonc*, No. 20-2845, 2021 WL 3207042, at *7 (D.D.C. July 29, 2021)), Plaintiff now posits that he inadvertently failed to include the words "negligence pursuant to" before "respondeat superior." Dkt. 11 at 20. But, even crediting Plaintiff's recharacterization of his second claim, it fails for the same reason his first claim fails: Plaintiff has not identified any duty, cognizable at common law, that the MCC or any MCC officer or employee violated. Nor does it matter that Plaintiff alleges, as part of his second claim, that the MCC was "negligent because it erroneously and inaccurately reported to anyone requesting background information regarding Plaintiff that his background investigation and or security clearance came back 'unfavorable.'" Dkt. 1 at 9 (Compl. ¶ 33). That allegation still fails plausibly to plead a duty of care to Plaintiff and, as discussed, the Court lacks subject-matter jurisdiction to hear "[a]ny claim arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). "Claims, no matter how they are described by a plaintiff, based on dissemination of defamatory information pertaining to a federal investigation are barred by the libel/slander exemption." *Edmonds v. United States*, 436 F.Supp.2d 28, 35 (D.D.C. 2006) (citing *Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991)).

Accordingly, the Court will dismiss Plaintiff's "respondeat superior" claim.

3.      *Wrongful Termination*

Plaintiff's third claim posits that the MCC was "negligent when [it] wrongfully

terminated Plaintiff."  Dkt. 1 at 8 (Compl. ¶ 32).  In response, the United States observes that

(1) Plaintiff was not a government employee, and, in any event, (2) as an at-will employee,

Plaintiff cannot state a claim for wrongful termination under D.C. law.  Dkt. 7 at 11–13.  The

Court agrees that Plaintiff's wrongful termination claim fails because he was not a government

employee.  In light of that conclusion, the Court need not consider the government's alternative

argument that Plaintiff's claim fails because he was an at-will employee.

Accepting Plaintiff's own allegations as true, the complaint avers that Plaintiff was

employed—and later terminated—by a government contractor.  *See, e.g.*, Dkt. 1 at 3 (Compl.

¶ 11) ("On February 22, 2016, Lamb began work as a contractor for the MCC."); *id.* (Compl.

¶ 13) ("Lamb learned from the contractor, whom purport[ed] to have held a contract with the

MCC, that [it was] advised to remove Plaintiff because his 'security check came back

unfavorable.'"); *id.* ("Despite Lamb's best efforts at seeking alternative employment, the

contractor that hired Lamb refused to re-hire him in any other capacity for any other job.").  The

MCC's organic statute, moreover, unambiguously provides that individuals with whom the

agency "contract[s] . . . for personal services . . . shall not be considered Federal employees for

any provision of law administered by the Office of Personnel Management."  22 U.S.C.

§ 7713(a)(8).  That ends matters with respect to Plaintiff's claim for wrongful termination: by his

own account, he was not a federal employee and, hence, was not terminated from federal

employment.[4]

---

[4] Even if Plaintiff was a federal employee, moreover, he would likely be unable to obtain relief
under the FTCA because "the Civil Services Reform Act of 1978 'provide[s] the exclusive
remedy for wrongful discharge from government employ.'" *Liu v. Sec'y of Dep't of Health &*

Given this obvious threshold difficulty, it may be that Plaintiff's wrongful termination

claim is better understood as a claim for tortious interference with a business relationship—that

is, the MCC did not terminate Plaintiff from government employment but, rather, caused his

actual employer to terminate him from private employment.  *Cf.* Restatement (Third) of Torts:

Liability for Economic Harm § 17 cmt. m (Am. L. Inst. 2020) (explaining that "[i]n many cases"

involving claims of interference with a business relationship, "the defendant has caused a third

party to break off contractual relations with the plaintiff entirely").  But that reading of the

complaint poses another equally insurmountable difficulty for Plaintiff: the FTCA expressly

precludes actions against the United States for "[a]ny claim arising out of . . . interference with

contract rights."  28 U.S.C. § 2680(h).  "[N]early every court that has addressed the issue,

including the D.C. Circuit, has held that actions for tortious interference with a business

relationship are barred as claims arising out of interference with contract rights."  *McNeil v.*

*Duncan*, No. 19-cv-694, 2020 WL 1536252, at \*6 (D.D.C. Mar. 31, 2020) (alterations, citations,

and quotation marks omitted).  The Court cannot discern a reason to depart from that settled

principle here.

Accordingly, the Court will dismiss Plaintiff's claim for wrongful termination for failure

to state a claim.

4.      *Infliction of Emotional Distress*

Plaintiff's fourth claim—infliction of emotional distress—fails as well.  In the view of the

United States, Plaintiff's fourth claim seeks to assert a claim for intentional infliction of

emotional distress ("IIED").  *See* Dkt. 7 at 13.  In response, Plaintiff now says that he also

---

*Human Servs.*, No. 21-cv-495, 2022 WL 1404260, at \*7 (D.D.C. May 4, 2022) (citations
omitted) (quoting *Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993)).

intended to assert a claim for negligent infliction of emotional distress ("NIED").  Either way, the claim fails.

> a.        Intentional Infliction of Emotional Distress

To state a claim for IIED under D.C. law, a plaintiff must allege "(1) extreme and outrageous conduct on the part of [the defendant] which (2) either intentionally or recklessly (3) cause[d] [him] severe emotional distress."  *Halcomb v. Woods*, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) (quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)).  The United States argues that Plaintiff's IIED claim fails because he does not allege that the MCC engaged in any "extreme and outrageous conduct."  Dkt. 7 at 14.  The Court agrees.

Under D.C. law, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."  *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023,1037 (D.C. 2015) (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994)).  As a result, taking the complaint as true, the Court must determine whether Plaintiff has plausibly alleged that the MCC's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Kerrigan*, 705 A.2d at 628 (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).  "This 'very demanding standard' is 'only infrequently met.'"  *Holloway v. Howard Univ.*, 206 F. Supp. 3d 446, 453 (D.D.C. 2016) (quoting *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997)).  "Especially in the employment context, the standard is exacting."  *Evans v. District of Columbia*, 391 F.Supp.2d 160, 170 (D.D.C. 2005) (collecting cases).

The allegations in Plaintiff's complaint, even if accepted as true, fail to clear this high hurdle.  In support of this claim, Plaintiff alleges that he was confronted in the lobby of his federal workplace, where he was "denied further entry into the building to begin his workday." Dkt. 1 at 19 (Compl. ¶ 51).  Plaintiff further alleges that the security officers who denied him access refused to explain why he was being turned away; denied him the opportunity to "retrieve his personal belongings," including "religious items of sentimental value;" and, eventually, "escorted [him] out of the building." *Id.* at 19–20 (Compl. ¶ 51).  Courts have, however, rejected IIED claims in similar—and even some more egregious—cases. *See, e.g.*, *Kerrigan*, 705 A.2d at 628 (holding that a plaintiff's IIED claim "failed as a matter of law" when he alleged that his employer "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position" because conduct of this type is attributable to "employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct" (quoting *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984))); *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1171–72 (D.C.1997) (dismissing claim where plaintiff allegedly was treated "in a hostile and unprofessional manner" and suffered "contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge"); *Tiefenbacher v. Am. Ass'n of Retired Persons*, No. 05-cv-1802, 2006 WL 1126841, at *4 (D.D.C. Apr. 27, 2006) (dismissing IIED claim where the defendant's alleged actions included "escorting [the plaintiff] from the building 'like a common criminal,'" making obscene, crude and sexually offensive statements, and terminating plaintiff).

Against that backdrop, the Court cannot conclude that Plaintiff has plausibly alleged an IIED claim.

b.      Negligent Infliction of Emotional Distress

In his opposition brief, Plaintiff contends that his complaint raises both intentional and negligent infliction of emotional distress claims and, because "Defendant has not responded" to the latter, "any opposition to this tort [is] conceded."  Dkt. 11 at 21.  The government counters that Plaintiff "nowhere places Defendant on notice of such a claim as required under [Federal Rule of Civil Procedure] 8," and in any event, the Complaint fails plausibly to allege a claim for NIED.  Dkt. 13 at 11.

As an initial matter, the Court cannot fault the United States for failing to address what Plaintiff now characterizes as his NIED claim in its opening brief.  Although *pro se* pleadings are construed liberally, that does not mean that a defendant should be disadvantaged due to the lack of clarity in those pleadings, and, here, most of the actions alleged in Plaintiff's fourth claim involve intentional conduct.  Plaintiff alleges that he "was confronted by security and his employer at the lobby in the building where he formerly worked," that he was "denied further entry," that he was given no "explanation as to why we was being confronted," and that he was denied permission "to retrieve his personal belongings."  Dkt. 1 at 19 (Compl. ¶ 51).  Eventually, buried in that claim, Plaintiff alleges that "[b]ut for the government's negligence, [he] would not have been the subject of a security concern" and would not have been "confronted at the lobby of his workplace."  *Id.* at 20 (Compl. ¶ 51).  But it is far from clear that this reference to "negligence" forms the basis of his fourth claim; rather, it merely repeats the premise for his first claim, which the Court has already concluded fails as a matter of law.  Giving Plaintiff the

benefit of the doubt, however, the Court will nonetheless consider whether he has stated an

NIED claim.

Under D.C. law, a plaintiff may recover for NIED under one of "two tests." *Lesesne v.*
*District of Columbia*, 146 F. Supp. 3d 190, 195 (D.D.C. 2015). First, the "zone of danger" test

allows a plaintiff to recover "for mental distress if the defendant's actions caused the plaintiff to

be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'"

*Hedgepeth*, 22 A.3d at 796 (D.C. 2011) (en banc) (quoting *Williams v. Baker*, 572 A.2d 1062,

1066 (D.C. 1990) (en banc)). Second, "the D.C. Court of Appeals permits NIED claims

when . . . there is a 'special relationship between the parties'" such that

> the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or
> has undertaken an obligation to the plaintiff, of a nature that necessarily implicates
> the plaintiff's emotional well-being, (2) there is an especially likely risk that the
> defendant's negligence would cause serious emotional distress to the plaintiff, and
> (3) negligent actions or omissions of the defendant in breach of that obligation have,
> in fact, caused serious emotional distress to the plaintiff.

*Lesesne*, 146 F. Supp. 3d at 195 (quoting *Hedgepeth*, 22 A.3d at 810–11). Under either

test, a plaintiff must allege negligent acts, and those acts must amount to a breach of a duty of

care. *See Bradley v. NCAA*, 249 F. Supp. 3d 149, 185 (D.D.C. 2017); *see also Hawkins v. Wash.*
*Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 106–07 (D.D.C. 2018).

As Plaintiff acknowledges, "his complaint is inartfully pled and lacks precision." Dkt. 11

at 20. But, even liberally construed, Plaintiff fails to plead the required elements of NIED under

either of the applicable tests. First, as noted above, the paragraphs in the complaint that allege

"actions or omissions . . . constitut[ing] the tort of inflicting of emotional distress" describe only

*intentional* actions that allegedly caused Plaintiff emotional harm. Dkt. 1 at 19–20 (Compl.

¶ 51). It would take a substantial leap of logic to infer from those intentional acts, such as

denying Plaintiff access to a federal workplace or declining to return his belongings, that the

MCC negligently subjected Plaintiff to emotional distress.  Nor does Plaintiff's passing reference

to "negligence" cure this defect.  Like Plaintiff's earlier allegations of negligence, this allegation

lacks any basis to conclude that the MCC violated a duty cognizable under D.C. tort law.

Finally, the complaint fails to allege that the government breached a duty of care by

denying him entry to his workplace.  Plaintiff does not plausibly allege, and the Court cannot

infer, that Plaintiff was "in danger of physical injury [due to] the defendant's negligence."

*Hawkins*, 311 F. Supp. 3d at 107.  The conclusory allegations that "Plaintiff, who is African

American, . . . fear[ed] for his own safety, particularly after receiving no discernible response" to

his request for an explanation, and that he feared "being arrested, physically abused[,] or even

gunned down by law enforcement," Dkt. 1 at 19-20 (Compl. ¶ 51), are not sufficient.  Under the

zone of interest test, the defendant's actions must place the plaintiff in danger of physical injury

and, as a result of that danger, the plaintiff must fear for his safety.  *Lesesne*, 146 F. Supp. 3d at

195.  Yet, here, Plaintiff fails to allege any facts that permit a plausible inference that he was, in

fact, in danger of physical injury or, indeed, that Plaintiff had any objectively reasonable basis to

fear for his physical safety.  Nor does the complaint allege that the government had a relationship

with Plaintiff "of a nature that necessarily implicate[d] [his] emotional well-being."  *Id.* (quoting

*Hedgepeth*, 22 A.3d at 810).  Without any plausible allegation of a duty, negligent conduct, or a

breach, Plaintiff's purported NIED claim fails as a matter of law.

The Court will, accordingly, dismiss Plaintiff's claim for "infliction of emotional

distress."

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the United States' motion to dismiss

all of Plaintiff's claims in *Lamb III* for failure to state a claim upon which relief may be granted.

19

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 26, 2022